IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| EDWARD TERANTINO, | : | CIVIL ACTION NO. 1:21-CV-1248 |
| | : | |
| Plaintiff | : | (Judge Conner) |
| | : | |
| v. | : | |
| | : | |
| FAWN FORTSON, ROBERT LYNCH, | : | |
| PAULA PRICE, KEVIN KAUFFMAN, | : | |
| and JOHN WETZEL, | : | |
| | : | |
| Defendants | : | |

**MEMORANDUM**

Plaintiff Edward Terantino filed this *pro se* lawsuit under 42 U.S.C. § 1983, alleging constitutional violations by various prison officials and medical department staff at the State Correctional Institution in Huntingdon, Pennsylvania (SCI Huntingdon). Defendants move to dismiss Terantino's complaint under Federal Rule of Civil Procedure 12(b)(6). For the reasons that follow, we will grant in part and deny in part defendants' motions to dismiss.

I.     **Factual Background & Procedural History**

The gravamen of Terantino's lawsuit is that he was allegedly denied prescription medication over a three-week period in mid-2020. According to Terantino, he turned in his expiring stickers for self-administered medication on June 15, 2020, as he would run out of those medications on June 18, 2020. (Doc. 1 at 5). The following day, defendant Certified Registered Nurse Practitioner Fawn

Fortson[1] came to his cell and asked whether he needed his prescriptions renewed, to which Terantino responded affirmatively. (Id.) Fortson then specifically asked if he wanted his prescription for Meloxicam renewed, and Terantino again responded that he did. (Id.) A dispute ensued regarding payment for the Meloxicam. (Id.) Fortson allegedly told Terantino that he would have to pay for the Meloxicam to be reissued and Terantino claims that he responded that he had never previously paid for the renewal, would not pay for the renewal this time, and—if charged for it— would bring the issue to Fortson's supervisor. (Id. at 5-6).

Terantino claims that this exchange was tense and angered Fortson. (Id.) He alleges that Fortson then deliberately, and with the intent to harm him, entered his prescription refill orders into the wrong section of the computer, thereby causing a substantial delay in receipt of his medications. (Id. at 6, 7). He describes the prescriptions as "life sustaining" medications, including Atorvastatin (for cholesterol), Glipizide (for Type II diabetes), Lisinopril (for high blood pressure), Furosemide (for water retention), and a blood thinner. (Id. at 7). Terantino avers that he spoke with multiple nurses about his missing medications between June 18 and July 3, 2020, to no avail. (Id. at 6-7).

On July 3, he filed an inmate grievance (number 876511), asserting that he had not received any of his self-administered medications since June 18. (Id. at 9).

---

[1] Fortson's last name is sometimes listed as "Baldauf," which appears to be a prior maiden name. (See Doc. 1 at 5, 10; Doc. 16 at 1, 3; Doc. 22 at 3). We will use the last name "Fortson," as this is how she is identified in Terantino's complaint. (See Doc. 1 at 3).

The grievance was addressed and denied by defendant Registered Nurse

Supervisor Robert Lynch.  (Id. at 10).  In the denial, Lynch explained,

> You have an obligation to be proactive with your medications.  You see
> a nurse daily for vital signs and Cymbalta.  You could have asked one of
> them for your medications.  You also could have signed up for sick call
> to voice the fact that you ran out of medications.  Medical cannot read
> your mind and know what you need.  If you had a poor experience with
> [Fortson] and were disrespectful to her and she terminated the visit, it
> would be your responsibility to sign back up for sick call.  Your
> medications were renewed on 7/7/2020 and issued on 7/8/2020.  Your
> grievance is without merit and is denied.

(Id.)  Terantino does not indicate in his complaint whether he appealed this first-

level grievance denial.

On June 30, 2021, Terantino filed the instant lawsuit.  (See generally Doc. 1;

see id. at 8).  It is not entirely clear what type of constitutional violation Terantino is

alleging, but it appears that he is asserting an Eighth Amendment claim of

deliberate indifference to serious medical needs.[2]  He names as defendants Fortson

and Lynch, as well as Health Care Administrator Paula Price, SCI Huntingdon

Superintendent Kevin Kauffman, and then-Secretary of the Pennsylvania

Department of Corrections (DOC) John Wetzel.[3]

Defendants move to dismiss Terantino's claims pursuant to Federal Rule of

Civil Procedure 12(b)(6).  (Docs. 14, 20).  Terantino has only responded to the DOC

---

[2] At one point in the "Relief" section of his complaint, Terantino references
"medical malpractice," (Doc. 1 at 4), but he does not plead or otherwise develop any
such state-law claim and we therefore will not discuss it further.

[3] Defendants Lynch, Price, Kauffman, and Wetzel are represented by the
Pennsylvania Office of the Attorney General and will be collectively referred to as
the "DOC defendants."  Fortson "is an independent medical contractor" and is
represented by separate counsel.  (Doc. 15 at 2 n.2).

defendants' motion to dismiss, (see Doc. 22), despite being served with Fortson's

motion to dismiss and supporting brief in December 2021, (see Doc. 20 at 5; Doc. 21

at 21).  The motions, therefore, are ripe for disposition.

## II.    **Legal Standard**

Rule 12(b)(6) of the Federal Rules of Civil Procedure provides for the

dismissal of complaints that fail to state a claim upon which relief can be granted.

FED. R. CIV. P. 12(b)(6).  When ruling on a motion to dismiss under Rule 12(b)(6), the

court must "accept all factual allegations as true, construe the complaint in the light

most favorable to the plaintiff, and determine whether, under any reasonable

reading of the complaint, the plaintiff may be entitled to relief."  Phillips v. County

of Allegheny, 515 F.3d 224, 233 (3d Cir. 2008) (quoting Pinker v. Roche Holdings,

Ltd., 292 F.3d 361, 374 n.7 (3d Cir. 2002)).  In addition to reviewing the facts

contained in the complaint, the court may also consider "exhibits attached to the

complaint, matters of public record, as well as undisputedly authentic documents"

attached to a defendant's motion to dismiss if the plaintiff's claims are based upon

these documents.  Mayer v. Belichick, 605 F.3d 223, 230 (3d Cir. 2010) (citing

Pension Benefit Guar. Corp. v. White Consol. Indus., Inc., 998 F.2d 1192, 1196 (3d

Cir. 1993)).

Federal notice and pleading rules require the complaint to provide "the

defendant fair notice of what the . . . claim is and the grounds upon which it rests."

Phillips, 515 F.3d at 232 (alteration in original) (quoting Bell Atl. Corp. v. Twombly,

550 U.S. 544, 555 (2007)).  To test the sufficiency of the complaint, the court conducts

a three-step inquiry.  See Santiago v. Warminster Township, 629 F.3d 121, 130-31

(3d Cir. 2010).  In the first step, "the court must 'tak[e] note of the elements a

plaintiff must plead to state a claim.'"  Id. at 130 (alteration in original) (quoting

Ashcroft v. Iqbal, 556 U.S. 662, 675 (2009)).  Next, the factual and legal elements of a

claim must be separated; well-pleaded facts are accepted as true, while mere legal

conclusions may be disregarded.  Id. at 131-32; see Fowler v. UPMC Shadyside, 578

F.3d 203, 210-11 (3d Cir. 2009).  Once the court isolates the well-pleaded factual

allegations, it must determine whether they are sufficient to show a "plausible claim

for relief."  Iqbal, 556 U.S. at 679 (citing Twombly, 550 U.S. at 556); Twombly, 550

U.S. at 556.  A claim is facially plausible when the plaintiff pleads facts "that allow[]

the court to draw the reasonable inference that the defendant is liable for the

misconduct alleged."  Iqbal, 556 U.S. at 678.

Courts should grant leave to amend before dismissing a curable pleading in

civil-rights actions.  See Fletcher-Harlee Corp. v. Pote Concrete Contractors, Inc.,

482 F.3d 247, 251 (3d Cir. 2007); Grayson v. Mayview State Hosp., 293 F.3d 103, 108

(3d Cir. 2002).  Leave to amend is broadly encouraged "when justice so requires."

FED. R. CIV. P. 15(a)(2).

## III.    Discussion

Section 1983 of Title 42 of the United States Code creates a private cause

of action to redress constitutional wrongs committed by state officials.  42 U.S.C.

§ 1983.  The statute is not a source of substantive rights, but serves as a mechanism

for vindicating rights otherwise protected by federal law.  Gonzaga Univ. v. Doe, 536

U.S. 273, 284-85 (2002); Kneipp v. Tedder, 95 F.3d 1199, 1204 (3d Cir. 1996).  To state

a Section 1983 claim, plaintiffs must show a deprivation of a "right secured by the

5

Constitution and the laws of the United States . . . by a person acting under color of state law." Kneipp, 95 F.3d at 1204 (quoting Mark v. Borough of Hatboro, 51 F.3d 1137, 1141 (3d Cir. 1995)).

The DOC defendants contend that any Section 1983 claim against them must be dismissed because they had no personal involvement in the alleged Eighth Amendment violation. Defendant Fortson asserts that Terantino has not plausibly stated a constitutional violation and has failed to exhaust his administrative remedies. We take each argument in turn.

**A.      Personal Involvement**

It is well established that, in Section 1983 actions, liability cannot be "predicated solely on the operation of *respondeat superior*." Rode v. Dellarciprete, 845 F.2d 1195, 1207 (3d Cir. 1988) (citations omitted); see also Ashcroft v. Iqbal, 556. U.S. 662, 676 (2009) (affirming same principle in Bivens context). Rather, a Section 1983 plaintiff must plausibly plead facts that demonstrate the defendant's "personal involvement in the alleged misconduct." Dooley v. Wetzel, 957 F.3d 366, 374 (3d Cir. 2020). Personal involvement can include direct wrongful conduct by a defendant, but it can also be demonstrated through evidence of "personal direction" or "actual knowledge and acquiescence"; however, such averments must be made with particularity. Id. (quoting Rode, 845 F.2d at 1207).

The DOC defendants are correct that, as to Price, Kauffman, and Wetzel, Terantino's complaint is completely devoid of allegations implicating personal involvement by these defendants. Their names, in fact, do not appear anywhere in the body of the complaint where Terantino discusses the alleged constitutional

6

infringement.  (See Doc. 1 at 5-7).  The claims against these three defendants, therefore, must be dismissed.

The only allegations implicating Lynch involve his review and denial of Terantino's inmate grievance.  The problem for Terantino, however, is that involvement in the post-incident grievance process alone does not give rise to Section 1983 liability.  See Lewis v. Wetzel, 153 F. Supp. 3d 678, 696-97 (M.D. Pa. 2015) (collecting cases); Brooks v. Beard, 167 F. App'x 923, 925 (3d Cir. 2006) (nonprecedential); Alexander v. Gennarini, 144 F. App'x 924, 925 (3d Cir. 2005) (nonprecedential) (explaining that prisoner's claims against certain defendants were "properly dismissed" because the allegations against them "merely assert their involvement in the post-incident grievance process").  According to the initial review response, by the time Lynch denied the grievance on July 13, 2020, Terantino's prescriptions had already been renewed and issued.  Consequently, Lynch must be dismissed for lack of personal involvement as well.

**B.     Eighth Amendment Medical Deliberate Indifference**

The Eighth Amendment to the United States Constitution prohibits the infliction of cruel and unusual punishments on prisoners.  See Farmer v. Brennan, 511 U.S. 825, 832 (1994).  In the context of prison medical care, the Eighth Amendment "requires prison officials to provide basic medical treatment" to incarcerated individuals.  Rouse v. Plantier, 182 F.3d 192, 197 (3d Cir. 1999).  To plausibly plead an Eighth Amendment claim of deliberate indifference regarding inadequate medical care, a plaintiff must allege (1) "a serious medical need," and (2) "acts or omissions by prison officials that indicate deliberate indifference to that

need."  Natale v. Camden Cnty. Corr. Facility, 318 F.3d 575, 582 (3d Cir. 2003).  A

serious medical need is "one that has been diagnosed by a physician as requiring

treatment or one that is so obvious that a lay person would easily recognize the

necessity for a doctor's attention."  Monmouth Cnty. Corr. Inst. Inmates v. Lanzaro,

834 F.2d 326, 347 (3d Cir. 1987).

Deliberate indifference by prison officials may be evidenced by intentional

refusal to provide care known to be medically necessary, delayed provision of

medical treatment for non-medical reasons, denial of prescribed medical treatment,

and denial of reasonable requests for treatment resulting in unnecessary suffering

or risk of injury.  See Durmer v. O'Carroll, 991 F.2d 64, 68 & n.11 (3d Cir. 1993)

(quoting Lanzaro, 834 F.2d at 346).  Deliberate indifference to serious medical needs

is an exacting standard, requiring a showing of "unnecessary and wanton infliction

of pain."  Estelle v. Gamble, 429 U.S. 97, 104 (1976) (citation omitted).  Claims

sounding in mere medical negligence will not suffice.  Rouse, 182 F.3d at 197.

Fortson argues that Terantino's allegations do not rise to the level of

deliberate indifference to serious medical needs.  We disagree.  According to

Terantino, Fortson deliberately deprived him of "life sustaining" prescription

medications for almost three weeks in retaliation for an in-cell disagreement about

payment.  This type of conduct could be categorized as delayed provision of medical

treatment for non-medical reasons.  See Durmer, 991 F.2d at 68.  Terantino further

avers that he experienced stress, anxiety, and physical pain from the withholding of

his medications.  (Doc. 1 at 4).  Terantino's allegations, taken as true, plausibly state

an Eighth Amendment medical indifference claim.

### C.      Exhaustion of Administrative Remedies

Fortson's exhaustion argument, although possibly meritorious, is premature.

The Prison Litigation Reform Act of 1995 (PLRA), 42 U.S.C. § 1997e *et seq.*, requires

prisoners to exhaust available administrative remedies before suing prison officials

for alleged constitutional violations.  See id. § 1997e(a); Ross v. Blake, 578 U.S. 632,

639, 642 (2016) (explaining that only "available" remedies must be exhausted).

Proper exhaustion is mandatory, even if the inmate is seeking relief—like monetary

damages—that cannot be granted by the administrative system.  See Woodford

v. Ngo, 548 U.S. 81, 85 (2006).  The exhaustion process is governed by the contours

of the prison grievance system in effect where the inmate is incarcerated.  Jones

v. Bock, 549 U.S. 199, 218 (2007); see also Woodford, 548 U.S. at 90-91.

Pennsylvania's Department of Corrections (DOC) employs a three-step

grievance process that must be completed to properly exhaust administrative

remedies in most cases.  See Booth v. Churner, 206 F.3d 289, 292 n.2 (3d Cir. 2002);

COMMONWEALTH OF PA., DEP'T OF CORR., INMATE GRIEVANCE SYS., Policy No. DC-

ADM 804 (May 1, 2015) (hereinafter "DC-ADM 804").  If informal resolution

attempts do not resolve the problem, the first step is to file a written grievance

(using form DC-804, Part 1) with the Facility Grievance Coordinator within 15

working days after "the event upon which the claim is based."  DC-ADM 804

§ 1(A)(3)-(5).  An adverse decision by the grievance coordinator may be appealed to

the Facility Manager within 15 working days of the initial-review response or

rejection.  Id. § 2(A)(1).  Finally, the decision of the Facility Manager may be

appealed to "Final Review" with the Secretary's Office of Inmate Grievances and

Appeals (SOIGA), and again must be submitted within 15 working days of the date of the Facility Manager's decision.  Id. § 2(B)(1).

It does not appear that Terantino appealed his initial grievance denial to the Facility Manager or sought final review with the SOIGA.[4]  However, failure to exhaust administrative remedies is an affirmative defense rather than a pleading requirement, and necessarily will require a factual determination that goes beyond the complaint.  See Paladino v. Newsome, 885 F.3d 203, 208, 211 (3d Cir. 2018).  We therefore cannot grant a Rule 12(b)(6) motion on this basis.  Rather, we are required to "notify the parties that" the court "will consider exhaustion in its role as a fact finder under Small[ v. Camden County, 728 F.3d 265 (3d Cir. 2013)]" and provide Terantino an "opportunity to respond."  Paladino, 885 F.3d at 211.  Fortson, accordingly, may renew her administrative exhaustion challenge via a motion for summary judgment under Federal Rule of Civil Procedure 56.  Should Fortson do so, Terantino will be on notice that this court will consider exhaustion in its role as a fact finder under Small and he will be given an opportunity to respond through the summary judgment briefing process.

_____

[4] Fortson provided an affidavit from Keri Moore, a DOC employee who works in the SOIGA.  (See Doc. 21-2 & ¶ 2).  According to Moore, "Terantino did not file any grievance in 2020 that was appealed to final review."  (Id. ¶ 7).  Nevertheless, we cannot consider such evidence at the Rule 12(b)(6) stage.  See Mayer, 605 F.3d at 230.

**IV.**     **Conclusion**

    We will grant in part and deny in part defendants' motions (Docs. 14, 20) to dismiss.  We will also grant Terantino leave to amend, if desired.  An appropriate order shall issue.

/S/ CHRISTOPHER C. CONNER
Christopher C. Conner
United States District Judge
Middle District of Pennsylvania

Dated:  May 6, 2022